OPINION OF THE COURT
Arlene E. Katz, J.
Relevant Background
Denise is a 16-year-old girl with multiple complex needs. In addition to her physical and mental challenges, Denise has been in and out of foster care for most of her life, having first been removed from her mother on May 20, 2005 and most recently removed on October 10, 2014. On March 23, 2016, with the assistance of the New York State Council on Children and Families Hard to Place/Hard to Serve Unit, Denise was placed[2] in New Hampshire, where she remains to date. Denise’s *801 mother, Latonia J., has had a number of neglect adjudications regarding Denise and her four siblings dating back more than a decade.
A permanency planning hearing regarding Denise is scheduled for June 8, 2016. Pursuant to Family Court Act § 1089 (a) (3), this hearing must commence no later than June 13, 2016, the date which marks “six months from the completion of the previous permanency hearing.”
On May 25, 2016, Denise’s attorney filed an order to show cause seeking this court to “direct Latonia J. and/or the West-chester County Department of Social Services to transport, or arrange for the transport, of Denise J. so she may participate in the Permanency Hearing scheduled for June 8, 2016.” In her supporting affirmation, she asserts Denise’s desire and right to appear in person, but states that “Placement has informed [her] that they will not transport Denise as they are of the position that the liability of transporting Denise is too great” (affirmation of Attorney for the Child ¶ 7).
Westchester County Department of Social Services (DSS or County), by its attorney, opposed this application. First, it referenced the June 18, 2016 effective date of the new Family Court Act § 1090-a codifying a child’s right to participate in his or her permanency hearing to mean that there is no current requirement that Denise physically appear at the permanency hearing. Second, it asserted that Denise cannot be safely transported to the permanency hearing. It stated that Placement “cannot” (affirmation of Assistant County Attorney ¶ 4) transport Denise and the assigned caseworker “does not have the qualifications necessary to control Denise’s behavior or to administer any medications the subject child may need during the day” {id. ¶ 5). The County asserted that Denise “has significant cognitive limitations and may not be able to meaningfully consult with her attorney . . . understand the travel time associated with her transport . . . [or] that [her mother] may be present” {id. ¶ 9). As an alternative, the County proposed that Denise appear by videoconference rather than in person.
Denise’s guardian ad litem[3] (GAL) also opposed the application as being contrary to Denise’s best interests, and requested that the court waive her physical appearance at the perma *802 nency hearing. The GAL asserted that Denise has the mental capacity of a six year old and is academically at a first grade level (affirmation of guardian ad litem ¶ 6), and her “severe behavioral outbursts [have required] lockdown, one-on-one supervision, and frequent restraints” {id. ¶ 7). The GAL’s discussions with professionals at both Placement and Pinefield Children and Youth Services (Pinefield) indicate that many of Denise’s outbursts have been triggered by reminders of her mother {id. ¶ 8), and her physical presence at the permanency hearing would be “detrimental to Denise’s health, well-being and safety [and would] exacerbate her behavioral issues and undermine her therapeutic treatment” {id. ¶ 10). For these reasons and because “there is no viable means of transporting her” {id.), he requested that the court waive Denise’s physical appearance and permit her to appear by telephone or videocon-ference, which would not be inconsistent with her needs and best interests.
Although this court directed all counsel to submit responsive papers, it is curious that counsel for Latonia J. did not do so, particularly as the relief requested seeks, in the alternative, an order directing Ms. J. to transport Denise to and from her placement in New Hampshire.
Applicable Law
While permanency hearings are necessarily about children, there was initially no requirement that the permanency hearings include children for whom many decisions were being made about their lives. In 2007, Family Court Act § 1089 was amended to require an “age-appropriate consultation with the child” (former Family Ct Act § 1089 [d], as amended by L 2007, ch 327, § 1, part B, § 11). However, great discrepancies existed throughout the state in the manner in which such age-appropriate consultation occurred. As a result, the Family Court Act was amended to require notice of permanency hearings to be given to children in foster care and to establish a statutory right for those children to attend such permanency hearings so that they have the opportunity to participate in the planning of their own futures (Family CtfAct § 1089, as amended by L 2015, ch 573, § 1; id. § 1090-a, as added by L 2016, ch 14, § 2).
Effective December 22, 2015, Family Court Act § 1089 was amended to require the local department of social services to *803 serve notice of permanency hearings upon children ages 10 and older at least 14 days in advance of the hearing (Family Ct Act § 1089 [b] [1-a]). Family Court Act § 1090-a, which was enacted on March 21, 2016 and effective 90 days thereafter, codifies substantial rights for children to participate in their permanency hearings.
Family Court Act § 1090-a (a) (2) provides that, “[e]xcept as otherwise provided for in this section, children age ten and over have the right to participate in their permanency hearings and a child may only waive such right following consultation with his or her attorney.” It further provides that “[n]oth-ing in this section shall be deemed to limit the ability of a child under the age of ten years old from participating in his or her permanency hearing” (id. § 1090-a [a] [3]). However, “[t]he court shall have the discretion to determine the manner and extent to which any particular child under the age of ten may participate . . . based on the best interests of the child” (id.). Significantly, other than the requirement that the child’s attorney notify the court and all counsel of the child’s desire and manner in which to participate at least 10 days in advance[4] (id. § 1090-a [d] [2]), the statute explicitly states that, at least with regard to children age 10 and older, “nothing [in this section] shall be deemed to require an attorney for the child to make a motion to allow for such participation” (id. § 1090-a [a] [3]).
For children ages 10 through 13, this right can be limited under certain circumstances. The statute contemplates a variety of situations in which this might occur and alternative means by which such children may participate. The text of Family Court Act § 1090-a (b) (2), in its entirety, provides the following:
“For children who are at least ten years of age and less than fourteen years of age, the court may, on its own motion or upon the motion of the local social services district, limit the child’s participation in any portion of a permanency hearing or limit the child’s in person participation in any portion of a permanency hearing upon a finding that doing so would be in the best interests of the child. In mak *804 ing a determination pursuant to this paragraph the court shall consider the child’s assertion of his or her right to participate and may also consider factors including, but not limited to, the impact that contact with other persons who may attend the permanency hearing would have on the child, the nature of the content anticipated to be discussed at the permanency hearing, whether attending the hearing would cause emotional detriment to the child, and the child’s age and maturity level. If the court determines that limiting a child’s in person participation is in his or her best interests, the court shall make alternative methods of participation available, which may include bifurcating the permanency hearing, participation by telephone or other available electronic means, or the issuance of a written statement to the court.”
However, “a child age fourteen and older shall be permitted to participate in person in all or any portion of his or her permanency hearing in which he or she chooses to participate” (id. § 1090-a [b] [1]). It was clearly contemplated and codified that circumstances may exist for which it might be in the best interests of a younger child to have his or her participation limited to varying degrees. It is equally clear — and conspicuously absent from the statute — that no such limitations can be applied to a child age 14 or older.
The role of an attorney for the child is to “zealously advocate the child’s position” (22 NYCRR 7.2 [d]). “If the child is capable of knowing, voluntary and considered judgment, the attorney for the child should be directed by the wishes of the child, even if the attorney for the child believes that what the child wants is not in the child’s best interests” (id. 7.2 [d] [2]). There are only two exceptions to this mandate in which the attorney for the child is permitted to substitute judgment. The first is a circumstance in which “the attorney for the child is convinced . . . that the child lacks the capacity for knowing, voluntary and considered judgment” (id. 7.2 [d] [3]). The other is a circumstance in which “the attorney for the child is convinced . . . that following the child’s wishes is likely to result in a substantial risk of imminent, serious harm to the child” (id.).
Situations involving an older child in which an attorney for the child is convinced of one of those two enumerated exceptions are rare, and his or her decision to substitute judgment cannot be made lightly. Even then, the attorney for the child *805 must still “inform the court of the child’s articulated wishes if the child wants the attorney to do so” (id.).
Discussion
As the ink is barely dry on the amendments to Family Court Act § 1089 and the creation of the new section 1090-a, it is not surprising to this court that no case law yet exists, making this a matter of first impression. In making this determination, this court has reviewed and considered, among other sources: the legislative history of these statutes; the 2008 New York State Permanent Judicial Commission on Justice for Children publication entitled, Tools for Engaging Children in Their Court Proceedings', New York State Office of Children and Family Services Administrative Directive 16-OCFS-ADM-08; cases addressing children participating in permanency hearings prior to the above amendments; and the moving and responsive papers filed by counsel and the guardian ad litem.
In reviewing the legislative history of these amendments, the Assembly Memorandum in Support provides powerful and compelling reasons to more actively engage children in their permanency hearings, as evinced by the following excerpt:
“Children in foster care often feel disconnected — by adult decisions that have not been fully explained at all to them. Involving children in their critical life decisions helps build self-efficacy skills. Self-efficacy — a person’s own belief in his/her capabilities to organize and execute the courses of action required to produce a given goal provides the building blocks for motivation, well-being and personal accomplishments throughout one’s life course. Giving children in foster care the opportunity to share their feelings, ideas, needs and desires will help them gain a sense of control over their lives, practice the art of advocating for their well-being and develop the decision making and negotiating skills needed to be self-reliant” (Legislative Mem, 2015 McKinney’s Session Laws of NY at 1887).
While the right for children to appear and participate in their permanency hearings was only recently codified, such practice has been the standard in at least portions of Albany County since as early as 2008. In Matter of Pedro M., the court had before it the issue of the meaning of the then-recent amendment to Family Court Act § 1089 (d) requiring the court to engage in “age-appropriate consultation with the child.” A *806 16-year-old child wished to appear in person at his permanency hearing. The Department of Social Services opposed this out of concern that his appearance would be emotionally upsetting to him, based upon testimony from his clinical specialist regarding his behavior surrounding the previous permanency hearing, including “punching staff, running into the road and twice pulling fire alarms” (Matter of Pedro M., 21 Misc 3d 645, 648-649 [Fam Ct, Albany County 2008]). Additionally, she testified that he “does not understand the court proceedings and, after his last appearance, he was confused” (id. at 649). However, in reviewing the child’s behavioral reports and all of the facts and circumstances occurring at the time of the previous permanency hearing, the court found that the “pattern of misbehavior does not support a court appearance causation theory” (id.). In a thorough and well-reasoned decision, the court found that “the Department has not met its burden to show by a preponderance of the evidence that special circumstances exist to deny Pedro his right to be heard and to deprive the court of its obligation to consult with Pedro in person” (id. at 649-650). Although dicta, the court raised concerns about the child’s constitutional rights and the required burden of proof to interfere with such rights. Even after expert testimony concerning Pedro’s violent and dangerous behaviors, the court permitted his personal appearance.
In the instant proceeding, Denise is reported to have engaged in aggressive and dangerous behavior. However, despite this, Denise’s attorney has consistently zealously advocated Denise’s position. This indicates to this court that Denise’s attorney has determined that Denise is capable of knowing, voluntary and considered judgment and that Denise’s decision to attend her permanency hearing in person is not likely to result in a substantial risk of imminent, serious harm to herself. Had one or both of those circumstances existed, her attorney would have had to substitute her own judgment and put forth a different position. However, she did not do so. As such, this court must discount the County’s supposition that Denise is unable to have a meaningful consultation with her attorney or understand what would be involved in attending her permanency hearing.
When Governor Cuomo signed the amendment to Family Court Act § 1089 into law, he stated the following in his approval memorandum:
“For a child in the foster care system, a permanency *807 hearing is a formative event. As drafted, however, this bill would have mandated that a child be present for the permanency hearing regardless of the facts and without exception. The Legislature has agreed to a chapter amendment that will ensure a child can decide whether he or she wants to participate in some or all of the permanency hearing, and if necessary, by electronic means. On that basis, I am signing this bill” (Executive Mem, 2015 McKinney’s Session Laws of NY at 1312).
The legislature has spoken on that issue in its creation of Family Court Act § 1090-a, which sets forth detailed and age-appropriate mechanisms by which youth may participate in their permanency hearings. For the youngest children, participation may be limited based upon their best interests. For older children, however, such restrictions were not placed on their rights to participate.
While the GAL urges this court to find that it is not in Denise’s best interests to appear in person at the permanency hearing, this court can find no legal basis by which it may exclude Denise for that reason. While it may be that Denise’s personal attendance is ultimately not in her best interests, this court is not empowered to use such determination to deny Denise her right to participate in person. While the GAL asks this court to waive Denise’s appearance, the right in question belongs to Denise. She, and no one else, has the ability to assert or waive such right.
This court is not compelled by the County’s argument that the assigned caseworker lacks the necessary qualifications to control Denise’s behavior or administer any needed medications as a legitimate rationale for this court to deny Denise the opportunity to participate in the permanency hearing in person. That particular caseworker’s qualifications, or lack thereof, are not germane to this court’s determination. Just as accommodations would need to be made for a youth with epilepsy, diabetes, or other condition posing the potential for administration of medication, DSS will need to make appropriate arrangements for Denise. While this court is not comparing Denise’s behavior to that of a youth involved in a juvenile delinquency proceeding, this court has had before it a number of youth in such proceedings with serious, and sometimes violent, behavioral and mental health issues, and those youth are routinely transported to and from a variety of facilities to *808 participate in his or her court proceedings. This court notes that Denise was transported from Pinefield in Utica, New York to Placement in New Hampshire, which is a trip of an equal, if not longer, duration than that from Placement to the courthouse.
Although the mother, by her counsel, did not submit responsive papers, it would be inappropriate and impractical for this court to direct that she arrange for Denise’s transportation, as Denise has been removed from her care, and given her mother’s history of neglect findings regarding Denise and her siblings. As such, this portion of the Attorney for the Child’s application must be denied.
Conclusion
These amendments to the Family Court Act have been drafted and approved by the legislature and signed by the governor, and there is sufficient legislative history to discern the purpose, intent and justification behind such amendments. This court will not legislate, albeit prospectively, from the bench and create an exception to these strongly and clearly worded statutes where none exists, thereby stripping Denise— and the many children similarly situated to Denise — of a statutory right to have her voice heard in decisions directly affecting her future.
While Family Court Act § 1090-a does not become effective until 10 days after Denise’s permanency hearing, this court does not read this new statute codifying a youth’s right to attend his or her permanency hearings to exclude a youth who has affirmatively expressed a desire to participate in decisions affecting her immediate future until that statute’s effective date. The existing requirement pursuant to Family Court Act § 1089 (d) that “ [t]he permanency hearing shall include an age appropriate consultation with the child” is more than sufficient to honor the request of a 16-year-old subject of a permanency hearing to be physically present at such hearing.
Neither the County nor the GAL has offered a reason why Denise should not have the opportunity to be heard in person just by virtue of the six-day fortuitous lag between the date on which Denise’s permanency hearing must commence and the date on which Family Court Act § 1090-a goes into effect. The conclusory assertions that Denise is a danger to herself and others is insufficient to negate her legal right to be present at her permanency hearing.
*809 Upon consideration of the legislative history and intent behind the amendments to Family Court Act § 1089 and creation of Family Court Act § 1090-a, this court considers Family Court Act § 1090-a to simply codify and clarify a right that already exists by virtue of the existing requirement for an age-appropriate consultation. The purpose behind the amendments — including the avoidance of a child feeling disconnected by adult decisions; building self-efficacy skills; and giving a child the opportunity to share her feelings and advocate for her well-being — cannot be served by denying Denise her opportunity to speak directly to this court, or denying this court the privilege of hearing directly from Denise.
Accordingly, it is hereby ordered that the Westchester County Department of Social Services shall transport, or arrange for transport of, Denise from Placement to her permanency hearing on June 8, 2016, and to transport, or arrange for transport of, Denise back to Placement at the conclusion of the proceeding; and it is further ordered that such transportation shall be done in a manner appropriate to Denise’s needs and by a person or persons with appropriate training and qualifications to manage Denise’s needs; and it is further ordered that any relief not specifically granted herein is denied.

. The name of the facility has been redacted and is referred to herein as ‘Placement.”

. A guardian ad litem was appointed for Denise upon application by her attorney based upon Latonia J.’s commencement of federal litigation against, inter alia, the County of Westchester, placing Ms. J.’s interests regarding *802 Denise in the federal case in direct conflict with her interests in this family court proceeding.

. The failure of an attorney for the child to notify the court of the request of a child age 10 or older to participate in his or her permanency hearing shall not be grounds to prevent such child from participation (Family Ct Act § 1090-a [d] [3] [ii]).